UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAVIAR BIOTEC Ltd.,

                    Plaintiff,

-against-

LA PRAIRIE, Inc. et al.,

                    Defendants.

---

No. 25-CV-1707 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant Laboratoires La Prairie SA's ("La Prairie SA") and Defendant La Prairie, Inc.'s ("LPI") (jointly "Defendants") motions to dismiss Plaintiff Caviar Biotec Ltd.'s First Amended Complaint, pursuant to the doctrine of forum non conveniens and Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes the motions.  For the reasons set forth below Defendants' motions to dismiss are GRANTED.

I.    **Background**

   A. **Allegations Set Forth and Incorporated by Reference in the First Amended Complaint**

   The First Amended Complaint alleges the following: Plaintiff is a limited company organized under the laws of the United Kingdom and headquartered in London, England, engaged in research and development related to extracting and processing caviar for applications in cosmetics, medical research, and other areas. (See dkt. no. 30 ["FAC"] ¶¶ 1, 11.)

La Prairie SA is a Swiss corporation with its principal place of business in Zurich, Switzerland. (FAC ¶ 13.) LPI, an affiliate of La Prairie SA, is a New Jersey corporation with its principal place of business in New York. (FAC ¶¶ 12 and 14.)

1. <u>The Capsum Disclosure</u>

In 2019, Plaintiff began researching and developing proprietary technologies and acquiring trade secrets regarding caviar's biochemical composition and its various uses. (FAC ¶¶ 33-42.) In 2020, seeking to commercialize its intellectual property, Plaintiff engaged with Capsuim, a cosmetics manufacturer. (FAC ¶ 43-44.) That year Plaintiff confidentially provided Capsum with certain trade secrets, referred to as the "Capsum Disclosure." (FAC ¶ 45.)

That disclosure included: proteomics analysis, proprietary datasets, transcriptome information, and a "Clean Caviar" document outlining plans for animal-based caviar. (FAC ¶ 46.) At the time of that disclosure, Capsum was a manufacturer or supplier for La Prairie SA. (FAC ¶ 46-47.)

Later, La Prairie SA obtained information from the Capsum Disclosure and, although La Prairie SA knew that Capsum was bound by confidentiality obligations, there was no agreement in place between Plaintiff and La Prairie SA at that time. (FAC ¶ 48.)

In early 2021, La Prairie SA initiated contact with Plaintiff. (FAC ¶ 50.) During those communications, La Prairie SA

acknowledged knowing about the Capsum Disclosure even though it was nonpublic and had not been shared with it by Plaintiff. (FAC ¶ 51.) At that time, La Prairie SA and Plaintiff had not yet executed a non-disclosure agreement ("NDA"). (FAC ¶ 52.)

2. <u>The La Prairie Disclosure</u>

By mid-2021, Plaintiff and La Prairie SA began exploring collaboration opportunities. (FAC ¶ 53.) In that context, La Prairie SA obtained additional confidential documents containing Plaintiff's R&D efforts, trade secrets, proteomics datasets, and details of proprietary methods, referred to as the "La Prairie Disclosure." (FAC ¶ 54.)

Plaintiff took measures to safeguard the confidentiality of its materials. (FAC ¶ 55.) Plaintiff and La Prairie SA executed a non-disclosure agreement ("the NDA") in May 2021, although the Capsum Disclosure was not provided under that NDA. (FAC ¶ 49.)

That NDA, between Plaintiff and La Prairie SA, contained the following forum selection clause:

> This Agreement, all amendments and accompanying agreements shall be governed by and construed in all respects in accordance with the material laws of Switzerland excluding any conflict of law rules which may direct that the laws of another jurisdiction be applied. The exclusive jurisdiction shall have the competent courts at the domicile of La Prairie. Notwithstanding the exclusive jurisdiction agreed on, La

Prairie may opt for any other available place of jurisdiction.[1]

(See dkt. no. 20-1 ["NDA"] ¶ 9.4.)

Ultimately, Plaintiff and La Prairie SA did not enter into a further commercial agreement. (FAC ¶ 56.) In late 2023, La Prairie SA announced that it had "reformulated" or "remastered" several skin caviar products, highlighting the incorporation of "Caviar Micro-Nutrients" and bioengineered components termed "Caviar Premier." (FAC ¶¶ 59-61.) It likewise released additional skin caviar products, such as, "Skin Caviar The Mist" and "Skin Caviar Liquid Lift," which incorporated these same components. (FAC ¶62.)

However, while La Prairie SA allegedly lacked the knowledge to develop such products before acquiring Plaintiff's trade secrets, after obtaining them, La Prairie SA used those secrets to develop and commercialize what it now promotes as "Caviar Micro-Nutrients" and "Caviar Premier." (FAC ¶¶ 63-64.)

Moreover, La Prairie SA disclosed Plaintiff's trade secrets, including the Capsum Disclosure, to Defendant LPI for use in regulatory submissions and promotional activities, and LPI also used Plaintiff's trade secrets, including the La Prairie Disclosure, for those same purposes. (FAC ¶¶ 66-67.)

---

[1] Although this language is not present in the FAC, the Court nevertheless considers it as incorporated by reference into the complaint.

Both Defendants now market the skin caviar products at issue in the Southern District of New York, throughout the United States, and worldwide, and product packaging shows that they are manufactured by or for La Prairie SA and distributed by LPI in New York City.  (FAC ¶¶ 68-69.)  As a result, both Defendants have profited from Plaintiff's efforts and investments.  (FAC ¶ 70.)

### 3. Patent Dispute

In addition, U.S. Patent No. 11,197,490, titled "Sturgeon Roe Sack Membrane-Derived Oil," was issued on December 14, 2021, and remains in force, and Plaintiff is its sole owner with enforcement rights.  (FAC ¶¶ 71-72.)  Both Defendants infringed this patent by importing, making, using, offering for sale, marketing, and / or selling products, including "Skin Caviar Nighttime Oil," in the Southern District of New York.  (FAC ¶¶ 73-75.)  La Prairie SA distributes these products within the Southern District of New York at locations such as the La Prairie Spa at 50 Central Park South, and at midtown retailers such as Saks Fifth Avenue and Bergdorf Goodman.  (FAC ¶¶ 75-76.)

### 4. Claims in the First Amended Complaint

Plaintiff asserts the following claims against both Defendants: Count I) trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"); Count II) misappropriation of trade secrets and confidential information under New York law; Count III) unfair competition; Count IV) unjust enrichment; and

Count V) infringement of U.S. Patent No. 11,197,490. (FAC ¶¶ 79-139.) Counts I-IV encompass both the Capsum Disclosure and the La Prairie Disclosure. (FAC ¶¶ 79-125.)

### B.  Procedural History

Plaintiff commenced this lawsuit in February of last year. (See dkt. no. 1.) In May, Defendants moved to dismiss Plaintiff's complaint. (See dkt. nos. 16, 18.) In June, Plaintiff filed its FAC, as discussed above. This Court extended the Defendants' response deadline through July 31. (See dkt. no. 33.) In July, Defendants timely moved to dismiss Plaintiff's FAC. (See dkt. nos. 36, 38.)

Defendants argue that the FAC should be dismissed for the following reasons (see dkt. nos. 37 [La Prairie SA Memorandum of Law in support of MTD ("MOL")], 37-1, 39 [LPI MOL], 39-1): First, pursuant to the forum selection clause in the NDA between La Prairie SA and Plaintiff, Counts I through IV should be dismissed against both Defendants, with respect to both the La Prairie Disclosure and the Capsum Disclosure, under the doctrine of forum non conveniens. (See dkt. nos. 37 at 4-11,[2] 37-1, 39 at 17-22, 39-1.) Second, Counts I through V should be dismissed against La Prairie SA because this Court lacks personal jurisdiction over La Prairie SA. (See dkt. nos. 37 at 11-21, 37-1.) Third, Plaintiff's

---

[2] Page numbers refer to original pagination.

federal misappropriation claims in Count I, against both Defendants, are barred by the statute of limitations. (See dkt. nos. 39 at 7-8, 39-1.) Fourth, Plaintiff's state and federal misappropriation claims, in Counts I and II, against both Defendants, should be dismissed for failure to state a claim because Plaintiff has failed to allege reasonable protective measures to protect its trade secrets in the Capsum Disclosure. (See dkt. nos. 39 at 8-9, 39-1.) Fifth, Count III, Plaintiff's unfair competition claim based on the Capsum Disclosure, should be dismissed against both Defendants for failure to state a claim because Plaintiff failed to allege requisite bad faith. (See dkt. nos. 39 at 10-11, 39-1.) Sixth, Plaintiff's unjust enrichment claim against both Defendants, in Count IV, should be dismissed for failure to state a claim because it is impermissibly duplicative of Plaintiff's misappropriation of trade secrets claims in Counts I and II. (See dkt. nos. 39 at 11-13, 39-1.) Seventh, Count V should be dismissed because the FAC fails to allege a plausible factual basis to support a patent infringement claim, and the factual allegations, in fact, confirm there was no infringement on behalf of either Defendant. (See dkt. nos. 39 at 13-17, 39-1.) Finally, the Court should deny Plaintiff leave to amend the complaint. (See dkt. no. 39 at 23-24.)

Plaintiff refutes each of Defendants' arguments. (See dkt. nos. 45 [Opp. to La Prairie SA's MTD], 46 [Opp. to LPI MTD].)

Defendants have replied, reiterating their arguments set forth in their original memorandums of law. (See dkt. nos. 48 [LPI Reply], 49 [La Prairie SA Reply].)

## II.  Standard of Review

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences" in the plaintiff's favor. Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (cleaned up). The Court

is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (ellipsis omitted).

**B.   Incorporation of Extrinsic Documents**

In determining the sufficiency of a claim under Rule 12(b)(6), the Court may review only the complaint, documents attached to the complaint or incorporated into it by reference, and documents "integral" to the plaintiff's allegations, even if not explicitly incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). The complaint "'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Id. at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). The Court may, therefore, consider documents integral to the complaint or incorporated by reference into the complaint on a motion to dismiss under Rule 12(b)(6). See Williams v. Time Warner Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (summary order).

A document is "integral" to the complaint "when the complaint 'relies heavily upon its terms and effect.'" Palin, 940 F.3d at 811 (quoting Chambers, 282 F.3d at 153). However, "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the Court's consideration

of the document on a dismissal motion; mere notice or possession is not enough." <u>Chambers</u>, 282 F.3d at 153.

III.    <u>**Discussion**</u>

**A. Forum Selection Provision**

Defendants argue that the claims in the FAC based on the La Prairie Disclosure should be dismissed against La Prairie SA because they are subject to the mandatory and exclusive language of the forum selection clause of the NDA. (<u>See</u> dkt. no. 37 at 4.) Defendants also assert that the forum selection clause equally applies to the claims against LPI, an affiliate of La Prairie SA. (<u>See</u> dkt. no. 39 at 18-20.)

For the following reasons, the Court finds: 1) the forum selection clause applies to both La Prairie SA and LPI, 2) that the language of the forum selection clause is mandatory, not permissive and that, 3) upon incorporating the other relevant factors, dismissal of these claims under the doctrine of <u>forum non conveniens</u> is appropriate.

The Court of Appeals mandates a "four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of <u>forum non conveniens</u>." <u>Rabinowitz v. Kelman</u>, 75 F.4th 73, 81 (2d Cir. 2023). To begin, this Court considers "whether the clause was reasonably communicated to the party resisting enforcement." <u>Id.</u> (quoting <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 217 (2d Cir. 2014)). Next,

the Court assesses "'whether the clause is mandatory,' that is, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Id. (quoting Martinez, 740 F.3d at 217). In the third step, the Court considers "whether the claims and parties involved in the suit are subject to the forum selection clause." Id. (quoting Martinez, 740 F.3d at 217). "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" Id. (quoting Martinez, 740 F.3d at 217). The final step requires the Court to decide "whether the resisting party has rebutted that presumption by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting Martinez, 740 F.3d at 217).

With respect to the second step, assessing whether the clause is mandatory, "[t]he overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law." Martinez, 740 F.3d at 217. However, "[i]n answering the interpretive questions posed by parts two and three of the four-part framework" the Court usually applies "the body of law selected in an otherwise valid choice-of-law clause." Id. at 217–18. Nevertheless, when the parties have not "urged the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum selection clause," the use

of federal law to interpret a forum selection clause remains appropriate.  Id. at 223.

Furthermore, "[t]he general rule in cases containing forum selection clauses is that when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 52 (2d Cir.1994) (internal marks and citation omitted).

At issue is the language of paragraph 9.4 of the NDA between Plaintiff and La Prairie SA.  (See NDA ¶ 9.4.).  The Court interprets the language in accordance with Swiss law.  See Martinez, 740 F.3d at 217–18.  In doing so, the Court may rely on an expert witness's testimony of Swiss law.  See Palacios v. The Coca-Cola Co., 757 F. Supp. 2d 347, 356 n.5 (S.D.N.Y. 2010) ("Courts in the Southern District of New York frequently rely on expert affidavits to evaluate the availability of a foreign forum.").  Nevertheless, Defendants acknowledge that Swiss law and U.S. law are similar with respect to interpreting the language of the NDA.  (See dkt. no. 37 at 6.)  Thus, this Court may "assume that foreign law is similar to that of [this] forum." Martinez, 740 F.3d at 223 (citation omitted).

1. <u>The Clause Was Reasonably Communicated</u>

Starting with step one, "whether the clause was reasonably communicated to the party resisting enforcement," <u>Rabinowitz</u>, 75 F.4th at 81, the Court finds that Plaintiff was on notice of and consented to the forum selection provision.  Indeed, Plaintiff's chief executive officer signed the NDA and initialed each page, including the page with the forum selection provision, Plaintiff's operations director also signed the final page of the NDA, and the last page of the NDA contains a Caviar Biotec Ltd. stamp. (<u>See</u> NDA.) Given the signatures and stamp on the NDA from officers of Caviar Biotec Ltd., "Plaintiff cannot now credibly claim that the clause was not reasonably communicated" to it.  <u>Giordano v. UBS</u>, AG, 134 F. Supp. 3d 697, 706 (S.D.N.Y. 2015).

2. <u>The Clause is Mandatory</u>

Step two is to determine whether the forum selection provision is mandatory or permissive.  <u>See</u> <u>Rabinowitz</u>, 75 F.4th at 81. The Court determines that it is mandatory.  The first sentence of paragraph 9.4 of the NDA states, "[t]his Agreement, all amendments and accompanying agreements shall be governed by and construed in all respects in accordance with the material laws of Switzerland excluding any conflict of law rules which may direct that the laws of another jurisdiction be applied."

The Court of Appeals interpreted similar language in <u>Global Seafood</u> and held that the language "<u>is governed by</u> Irish Law and

the Irish Courts," alone did not confer exclusive jurisdiction to that forum. 659 F.3d 221, 226 (2d Cir. 2011) (emphasis added). The Court reasoned that "'governed' is not accompanied by a phrase analogous to 'are to be brought,' i.e., specific language that actively channels the suit to a particular court, which would indicate an intent to make the Irish Courts the <u>only</u> courts that can govern disputes arising out of the [] [] Agreement." <u>Id.</u> The Court of Appeals held that an enforceable forum selection clause must contain a "clear indication that it was granting exclusive jurisdiction to the [specified forum]." <u>Id</u>. at 225 (quotation marks and citation omitted); <u>see also id.</u> at 226 ("Here the question is whether the phrase 'is governed by Irish Law and the Irish Courts' contains sufficiently clear language mandating Irish Courts as having exclusive jurisdiction or as an obligatory venue.").

Here, the Court needs to look no further than the succeeding sentence in the forum selection provision —— "<u>The exclusive jurisdiction</u> shall have the competent courts at the domicile of La Prairie." (NDA ¶ 9.4(emphasis added)) —— to determine that there is, in fact, clear language mandating exclusive jurisdiction in Switzerland. The domicile of La Prairie SA, according to the FAC and the NDA, is Switzerland. (FAC ¶ 13; NDA at 1.) And, lest there be any doubt as to whether this jurisdiction is exclusive, the final sentence in the forum selection provision confirms this

by stating that there is "exclusive jurisdiction agreed on." (Id.)
For these reasons, the Court finds that the forum selection
provision at issue contains sufficiently clear language mandating
exclusive jurisdiction in Switzerland.  See Bense v. Interstate
Battery Sys. of America, Inc., 683 F.2d 718, 722 (2d Cir. 1982)
(courts should not adopt interpretation that "would render the
forum selection clause meaningless").

3. The claims and parties involved in the suit are subject to
   the forum selection clause

Step three is for the Court to consider "whether the claims
and parties involved in the suit are subject to the forum selection
clause." Rabinowitz, 75 F.4th at 81.  First, the Court finds that
the forum selection clause applies to both La Prairie SA and LPI.
Without question, the NDA applies to La Prairie SA, which is a
named party in the NDA, bears its stamp on every page of the NDA,
and contains the signature of initials of its Global Director for
Strategic Innovation & Science on each page of the agreement. (See
NDA at 1-5.)

In addition, the Court finds that the NDA applies to LPI.
Indeed, the FAC alleges that La Prairie SA and LPI "are and were
at all relevant times the agents, affiliates, alter egos, partners,
assignees, successors-in-interest, or principals of each other .
. . ." (FAC ¶ 14.)  Furthermore, the NDA requires La Prairie SA's
affiliates to comply with the agreement and defines "affiliates"

to include entities "which a Party directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the Party." (NDA ¶¶ 1.2, 2.2, 6.) Indeed, Plaintiff, in its opposition, does not contest that the NDA applies to LPI. (See generally, dkt. no. 46.) Accordingly, the Court finds that, per the plain language of the NDA, both under Swiss law and the law of this forum, the forum selection provision applies to LPI. See e.g., NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 350 (S.D.N.Y. 2020) (To bind a non-signatory to a forum-selection clause, the party must be "closely related" to a signatory, and the inquiry turns on whether enforcement was "foreseeable" based on their relationship (citations omitted)).

Furthermore, the Court finds that the forum selection clause governs Counts I-IV of the FAC regarding the La Prairie Disclosure. Indeed, Plaintiff alleged in the FAC that the La Prairie Disclosure was made "in strict confidence" (FAC ¶ 4), that the NDA was executed in May 2021 (FAC ¶ 49), and that at the time of the La Prairie Disclosure, Defendants "knew or had reason to know" of their "duty to maintain the secrecy of the trade secret." (FAC ¶ 90). These allegations are plainly related to the obligations in the NDA and thus they are governed by the forum selection clause. Specifically, with respect to Counts I (DTSA misappropriation) and II (NY trade secret misappropriation), "Plaintiff can only recover on its trade secret claims by

16

demonstrating that Defendants breached the contract containing the forum selection clause. The contract is therefore the source of the duty Plaintiff seeks to enforce, and thus the forum selection clause governs the claims." Transient Path, LLC v. Stones S. Bay Corp., 2024 WL 3730113, at *6 (S.D.N.Y. Aug. 8, 2024). Moreover, with respect to Counts III (NY unfair competition) and IV (unjust enrichment), these claims too fall within the scope of the forum selection provision as the litigation of these claims "will inevitably require reference to rights and duties defined" in the NDA. George V Eatertainment S.A. v. Elmwood Ventures LLC, 2023 WL 2403618, at *6 (S.D.N.Y. Mar. 8, 2023).

    4. Plaintiff Has Not Rebutted the Presumption of Enforceability

Because the first three prongs of the applicable analysis are met, the forum selection clause is "presumptively enforceable" and the Court now asks whether Plaintiff "has rebutted that presumption by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Rabinowitz, 75 F.4th at 81 (citation omitted). At this step Plaintiff has a "heavy burden." Id.

The Court concludes that Plaintiff has not rebutted the presumption of enforceability. First, Plaintiff is a London-based limited company incorporated in the United Kingdom, (see FAC ¶¶ 1, 11), and, therefore, is located significantly closer to

17

Switzerland than New York.  Moreover, Plaintiff's own actions ——
asserting claims under Swiss law, communicating with Swiss
counsel, and proposing to meet in Zurich (Dkt. no. 20 ¶¶ 16–22) —
— demonstrate it can litigate in Switzerland without hardship. See
Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 149 (2d Cir.
1980) (en banc) (A district court may rely on affidavits in
considering motion to dismiss regarding forum non conveniens).

For these reasons, the Court concludes that Counts I-IV
regarding the La Prairie Disclosure should be dismissed against La
Prairie SA and LPI under the doctrine of forum non conveniens
pursuant to the agreed upon forum selection clause.  Accordingly,
these counts are DISMISSED.

Having dismissed Counts I-IV against La Prairie SA and LPI
with respect to the La Prairie Disclosure, the Court now turns to
Counts I-IV with respect to the Capsum Disclosure. Thereafter, the
Court will address Count V.

**B.    This Court has Personal Jurisdiction over La Prairie SA**

La Prairie SA moves to dismiss Counts I-V for lack of personal
jurisdiction.  (See dkt. no. 37 at 11.)  And both Defendants move
to dismiss Counts I-IV with respect to the Capsum Disclosure for
failure to state a claim. (See dkt. no. 39 at 5.) Because La
Prairie SA moves to dismiss pursuant to Rule 12(b)(2) arguing the
Court lacks personal jurisdiction, Court first addresses the
preliminary question of personal jurisdiction before considering

the legal sufficiency of the allegations of the FAC.  See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant [because] a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim").

Defendants assert that Counts I through V should be dismissed against La Prairie SA because this Court lacks personal jurisdiction over La Prairie SA.  The Court finds that Plaintiff has made a prima facie showing that jurisdiction exists.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006).  "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks and citation omitted).  In considering a motion to dismiss for lack of personal jurisdiction, "the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying

affidavits, declarations, and other written materials." Knight v. Std. Chtd. Bank, 531 F. Supp. 3d 755, 760 n.1 (S.D.N.Y. 2021); accord MacDermid, Inc. v. Deiter, 702 F.3d 725, 727-28 (2d Cir. 2012). Moreover, at the pleading stage, in the event of conflicting information, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d at 673 (citation omitted).

To decide matters of personal jurisdiction, district courts engage in a two-step analysis. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). The first step is "to determine whether there is jurisdiction over the defendant under the relevant forum state's laws—which, in this case, are the various subsections of New York's C.P.L.R. § 302(a)." Id. Second, the Court must "determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." Id. Although, "where personal jurisdiction is appropriate under section 302(a), the requirements of due process are met." GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 321 (S.D.N.Y. 2009) (citing D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 105 (2d Cir.2006)).

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person

or through an agent . . . transacts any business within the state
or contracts anywhere to supply goods or services in the state."
Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161,
168 (2d Cir. 2013) (quoting N.Y. C.P.L.R. § 302(a)(1)) (ellipses
in original).  Two conditions must be met to establish personal
jurisdiction under Section 302(a)(1), "(1) The defendant must have
transacted business within the state; and (2) the claim asserted
must arise from that business activity."  Id.  The "arising from"
requirement does not require a causal connection, only that the
claim is sufficiently related to the defendant's New York
transaction so it is not "completely unmoored" from it.  Id. at
168-69.

As relevant here, the Amended Complaint alleges:

This Court has personal jurisdiction over La Prairie SA
because it has sufficient minimum contacts with the Southern
District of New York as a result of substantial business
conducted within the State of New York.  For example, upon
information and belief, La Prairie SA distributes its "Skin
Caviar" cosmetics through the La Prairie Spa at 50 Central
Park South, New York, NY 10019, as well as at a number of
District- and New York-based retailers, including the Saks
Fifth Avenue, Bloomingdale's, and Bergdorf Goodman department
stores in midtown Manhattan.  Upon information and belief, La
Prairie SA has also distributed its "Skin Caviar" products to
customers in this District and the State of New York. As such,
La Prairie SA has demonstrated that it is ready and willing
to conduct business with residents of this District and the
State of New York – including by offering for sale and/or
selling products that contain or embodying Caviar Biotec's
misappropriated technologies and discoveries and/or infringe
its patent – and actively does so.

(FAC ¶ 18.)  Moreover, in a footnote, the FAC states "La Prairie

SA's website . . . highlights and directs customers to at least nine locations within this District where La Prairie SA distributes its "Skin Caviar" products". Id. at ¶ 18 n.1.  Another footnote links to an architectural website "describing and depicting 'Offices for La Prairie Global Headquarters' in New York, NY." Id. at ¶ 21 n.3.

Furthermore, Plaintiff attached in its opposition, an image of "the products at issue in this case." (Dkt. no. 45 at 7).  The image shows an object with the following text on it: "MADE IN SWITZERLAND FABRIQUE EN SUISSE, LABORATOIRES LA PRAIRIE S.A. D-76530 BADEN-BADEN LA PRAIRIE, INC., DISTR., NEW YORK, N.Y. 10019 laprairie.com." (Dkt. no. 45 at 7).  Defendants characterize the image as "La Prairie product packaging retrieved from Google image searches, showing LA PRAIRIE SA as the products' manufacturer, without any evidence of where those products were sold."  (Dkt. no. 49 at 6).  Defendants, however, do not dispute the authenticity of the text depicted in the image.

Contrary to the FAC, La Prairie SA's witness declaration states, "[a]t no time prior to Plaintiff's filing the Complaint in this lawsuit did La Prairie SA transact business in New York, or elsewhere in the United States, or contract with third parties to supply goods or services in New York or elsewhere in the United States." (Dkt. no. 20 ¶ 8.)

However, La Prairie SA's declaration also states, "La Prairie SA, among other activities, either by itself or by engaging third parties, researches and formulates cosmetic products for the cosmetic brand known as 'La Prairie' in its offices in Switzerland." (Dkt. no. 20 ¶ 6.)  The declaration further states, "La Prairie Inc. is a New Jersey corporation and affiliate of La Prairie SA. La Prairie Inc. operates as a distributor of La Prairie products within the United States." (Id. ¶ 14.)

While there is conflicting information as to the extent of LA Prairie SA's business dealings in New York, the Court resolves this dispute in Plaintiff's favor.  See In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d at 673.  Indeed, the undisputed image of "La Prairie product packaging . . . showing LA Prairie SA as the products' manufacturer," (dkt. no. 49 at 6), prima facie shows that LA Prairie distributes its products within the Southern District of New York.  (See Dkt. no. 45 at 7 ("DISTR., NEW YORK, N.Y. 10019")).  Furthermore, the FAC alleges that Defendants' "Skin Caviar" products were sold throughout the district.

Accordingly, the Court finds that personal jurisdiction exists under § 302(a)(1) because Plaintiff has made a prima facie showing that LA Prairie SA transacted business within the district and that the claims asserted arise from that business activity. Furthermore, because personal jurisdiction exists under

§ 302(a)(1) "the requirements of due process are met." GEM Advisors, Inc., 667 F. Supp. 2d at 321.

## C.    Reasonable Protective Measures

Defendants assert that Plaintiff's state and federal misappropriation claims, in Counts I and II, against both Defendants, should be dismissed for failure to state a claim because Plaintiff failed plausibly to allege reasonable protective measures to protect its trade secrets in the Capsum Disclosure. The Court agrees with Defendants.

"Because the elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim, courts have found that a complaint sufficiently pleading a DTSA claim also states a claim for misappropriation of trade secrets under New York law." Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021) (cleaned up, citation omitted).

"[T]he courts require that the possessor of a trade secret take reasonable measures to protect its secrecy." Defiance Button Mach. Co. v. C & C Metal Prods. Corp., 759 F.2d 1053, 1063 (2d Cir. 1985) (quotation marks and citation omitted). Without such measures, the trade secret will not be protected. Id. Indeed, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his

24

property right is extinguished." <u>Ruckelshaus v. Monsanto Co.</u>, 467
U.S. 986, 1002 (1984).

The FAC's allegations regarding Plaintiff's efforts to
protect its trade secrets with respect to the Capsum Disclosure
are conclusory and insufficiently plead.

Although the FAC asserts that Plaintiff "took significant
measures" to safeguard its information, the measures identified,
"limiting access to specific personnel, securing its electronic
servers and accounts," (FAC ¶ 42) not sharing trade secrets without
"an obligation such party would maintain the confidentiality of
the information shared and not use or disclose the information
without Caviar Biotec's consent," (FAC ¶ 42) are merely "naked
assertions devoid of further factual enhancement." <u>DeJesus v. HF
Mgmt. Servs., LLC</u>, 726 F.3d 85, 87 (2d Cir. 2013) (quotation marks
and citation omitted).

Indeed, the FAC does not state with any specificity what
information was restricted, which personnel had access, or what
particular technological safeguards were employed. Nor does it
provide any information on what confidentiality obligations
existed with any individual. Most critically, it provides no
information whether a nondisclosure agreement was signed between
the parties before the disclosure. <u>C.f. Espire ADS LLC v. TAPP
Influencers Corp.</u>, 655 F. Supp. 3d 223, 251 (S.D.N.Y. 2023)
(finding reasonable measures where "plaintiffs allegedly utilized

myriad confidentiality agreements and non-disclosure agreements as an express condition precedent to revealing their trade secrets.") (internal quotations omitted).

Rather, the allegations merely recite that Plaintiff took measures to protect its trade secrets, without supplying factual detail to make that assertion plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")  For this reason, the allegations are conclusory and fail to meet the pleading requirements for the misappropriation trade secrets claims in Counts I and II with respect to the Capsum Disclosure.  See Defiance Button Mach. Co., 759 F.2d at 1063. Accordingly, Counts I and II, with respect to the Capsum Disclosure, are DISMISSED.[3]

### D.  **Unfair Competition Claim**

Defendants assert that Plaintiff's unfair competition claim based on the Capsum Disclosure, in Count III, against both

---

[3] The Court alternatively dismisses Count I with respect to the Capsum Disclosure as untimely.  Plaintiff alleged that the Capsum Disclosure occurred in 2020 and that it was aware that La Prairie SA had knowledge of the Capsum Disclosure in "early 2021." (FAC ¶¶ 45-52.)  The statute of limitations for a federal trade secrets claim is three years and may be decided in a 12(b)(6) motion in this instance.  See 18 U.S.C. § 1836(d); Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citation omitted)).

Defendants, should be dismissed for failure to state a claim because Plaintiff failed plausibly to allege requisite bad faith. The Court agrees with Defendants.

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Pauwels v. Deloitte LLP, 83 F.4th 171, 185 (2d Cir. 2023) (citation omitted). Furthermore, "[u]nder New York law, where an unfair competition claim and a misappropriation claim arise from the same factual predicate the two claims generally rise or fall together." Id. at 185–86 (citation omitted.)

The FAC offers only conclusory assertions that La Prairie SA was aware of confidentiality obligations related to the Capsum Disclosure. (See FAC ¶¶ 48, 112.)  However, Plaintiff has not alleged that La Prairie SA accessed the Capsum Disclosure "either through fraud or deception." Pauwels, 83 F.4th at 186 (citation omitted.)  To the contrary, Plaintiff engaged in the Capsum Disclosure without the benefit of any non-disclosure agreement between itself and La Prairie SA. (See FAC ¶¶ 49, 52.).

With respect to LPI, Plaintiff alleged merely "upon information and belief" that La Prairie SA provided the Capsum Disclosure to LPI for regulatory filings or promotional efforts.

(See FAC ¶ 66.)  Again, these assertions do not plausibly allege the requisite bad faith. See Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 511 (S.D.N.Y. 2018) (Dismissing unfair competition claim that "contains no non-conclusory allegations").

Accordingly, Count III, with respect to the Capsum Disclosure, is DISMISSED.

### E.   **Unjust Enrichment Claim**

Next, Defendants assert that Plaintiff's unjust enrichment claims against both Defendants, in Count IV, should be dismissed for failure to state a claim because they are impermissibly duplicative of Plaintiff's misappropriation of trade secrets claims in Counts I and II.  (Dkt. no. 39 at 11.) The Court agrees with Defendants.

Duplicative claims of unjust enrichment, where the same factual allegations are pled for other contract and tort claims, should be dismissed. See e.g., Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 512-13 (S.D.N.Y. 2018) (dismissing the unjust enrichment claim due to Plaintiff's failure to explain how it differed from the other contract and tort claims); iSentium, LLC v. Bloomberg Fin. L.P., 2018 WL 6025864, at *4 (S.D.N.Y. Nov. 16, 2018) ("Because the conduct alleged in support of the unjust enrichment claim falls within the breach of contract claim, the unjust enrichment claim is dismissed as redundant.").

Whether Counts I and II succeed or fail is irrelevant, rather the pertinent question is whether Count IV is duplicative. <u>See Corsello v. Verizon N.Y., Inc.</u>, 18 N.Y.3d 777, 790-91 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim . . . . To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."). Here, the FAC's unjust enrichment claim rests on the same factual allegations as Plaintiff's trade secrets claims in Counts I and II. Plaintiff's assertion that the unjust enrichment claim encompasses "confidential information, intellectual property, <u>and other property,</u>" (dkt. no. 46 at 5 (quoting FAC ¶¶ 119-21) (emphasis in original)), and thus exceeds the scope of the trade secrets claims, is unavailing. Merely mentioning the words "other property" is insufficient to survive the plausible pleading standard. <u>Iqbal</u>, 556 U.S. at 678. Thus, the unjust enrichment claim is duplicative of Plaintiff's contract and tort claims and is DISMISSED.

### F.    <u>Patent Infringement Claim</u>

Lastly, Defendants assert that the FAC fails to allege a plausible factual basis to support a patent infringement claim in Count V, and the factual allegations, in fact, confirm there was

no infringement on behalf of either Defendant. The Court agrees with Defendants.

Plaintiff alleges that Defendants' "Skin Caviar Nighttime Oil" products (the "Accused Products") infringe Plaintiff's patent, United States Patent No. 11,197,490 (dkt. no. 30-1 ["the '490 patent"])), "including but not limited to claim 5 [of the '490 patent], either literally or under the doctrine of equivalents." (FAC ¶ 127.) In turn, claim 5 of the '490 patent describes a method of preparing "sturgeon roe sack membrane-derived oil" in which the sturgeon roe sack membrane is subjected to a protein denaturing treatment to "separate the oil from the protein in the sturgeon roe sack membrane." ('490 patent at col. 5:41.) Plaintiff alleges two bases that the accused products infringe: (1) the accused products include Caviar Retinol which contains "caviar-derived retinol" that "necessarily originates from . . . the sturgeon roe sack membrane" and, thus, constitutes a "sturgeon roe sack membrane-derived oil" (FAC ¶ 131); and (2) a recent patent application filed on behalf of La Prairie SA describes how the Accused Products are "prepared by a method that includes subjecting the sturgeon roe sack membrane to a protein denaturing treatment to separate the oil from the protein in the sturgeon roe sack membrane." (Id. ¶ 133.)

Notably, regarding Plaintiff's first basis, the '490 patent does not claim all caviar-derived retinol that originates from the

sack membrane or, as Plaintiff words it, all "sturgeon roe sack membrane-derived oil."    (Id. ¶ 131.)    Rather, the patent only claims a method of deriving oil directly from the membrane itself after it has been separated from the roe.    (See '490 patent at col. 5:41-50 (describing "harvesting roe from sturgeon roe sacks, to produce sturgeon roe and sturgeon roe sack membrane," then afterwards "subjecting the sturgeon roe sack membrane to a protein denaturing treatment to separate the oil from the protein in the sturgeon roe sack membrane; and collecting the oil to obtain the sturgeon roe sack membrane-derived oil.").)

Importantly, Plaintiffs do not plausibly alleged that the accused products "subject[] the sturgeon roe sack membrane to a protein denaturing treatment to separate. . . and collect[] the oil."  Instead, they allege that "any caviar-derived retinol . . . necessarily originates from . . . the sturgeon roe sack membrane." (FAC ¶ 131 (emphasis added).)  Without more, the allegation that accused products use caviar-derived retinol that "originates from" the sturgeon roe sack membrane is conclusory as to infringement as it does not provide a plausible basis that the accused products infringe the claimed method.  Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1354 (Fed Cir. 2021) (internal quotations omitted) ("Under Iqbal/Twombly, allegations that are merely consistent with infringement are insufficient.")

Moreover, the FAC alleges that caviar-derived retinol is the "retinol in sturgeon roe" and states that the sturgeon roe eggs are stored in and are separable from the roe sack and the roe sack membrane. (FAC ¶¶ 131-32.) Thus, the FAC itself alleges that the accused products, along with "any caviar-derived retinol," extract retinol from the roe, but not from the sturgeon roe sack membrane. Indeed, the '490 patent also acknowledges that after the sturgeon roe sacks have been separated from the sturgeon roe (caviar) they are "normally discarded in conventional caviar production." ('490 patent at col. 1:16-18.) Therefore, the factual allegations in the FAC "are actually <u>inconsistent</u> with and contradict infringement" and are thereby insufficient to state a claim. <u>Bot M8</u>, F.4th at 1354 (emphasis added).

Plaintiff attempts to remedy this defect by advancing a second argument supporting infringement that refers to a recent patent application filed on behalf of La Prairie SA that describes how Defendant "prepares caviar extracts via a protein denaturing treatment." (FAC ¶ 133.) Plaintiff alleges that this patent shows that the accused products were "prepared by a method that includes subjecting the sturgeon roe sack membrane to a protein denaturing treatment to separate the oil from the protein in the sturgeon roe sack membrane." (<u>Id.</u>) However, the patent application Plaintiff incorporates by reference, U.S. Pub. No. 2023/03 assigned to Dudler et al., describes the use of caviar extracts that are prepared

from the eggs themselves, not the roe sack membrane.  (See dkt. no. 39-4 ("Dudler Patent") ¶ 0041 "[a]ccording to the invention, 'caviar extract' is to be understood as meaning extracts of sturgeon fish eggs.").  Thus, the Dudler Patent, incorporated by reference, reinforces the conclusion that the allegations pleaded in the FAC do not plausibly allege infringement.

Contrary to Plaintiff's assertion, the Court's conclusion that Plaintiff has failed plausibly to plead infringement does not rely on untimely claim construction or a lack of "magic words." (Dkt. no. 46 at 7-8.)  The Court is not applying a "requirement that the facts alleged mimic the precise language used in a claim." In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1343 (Fed. Cir. 2012) (superseded by statute on other grounds).  Rather, the Court concludes that Plaintiff has not alleged facts that "plausibly suggest a specific element" of claim 5 of the '490 Patent is being practiced by Defendant and has pled facts that "defeat [the] claim on its face," even after granting "their broadest possible construction at this stage of the proceedings." Id. at 1342-43, 1343 n.13.  As explained above, Plaintiff has affirmatively pled that Defendants practice a different method of retinol extraction from the one described in the '490 patent because caviar retinol is made by extracting oil from the sturgeon roe (caviar) after it has been separated from the sack membrane.  Accordingly, dismissal of Claim V with

prejudice is appropriate. See Ottah v. Fiat Chrysler, 884 F.3d 1135, 1142 (Fed. Cir. 2018) (affirming dismissal with prejudice when Plaintiff failed to plead plausible infringement of each claim limitation).

### G.  Leave to Amend

Finally, Plaintiff seeks leave to amend. (See dkt. no. 46 at 15.)  After Defendants filed their initial motions to dismiss, which raised the same jurisdictional and forum-related objections at issue now, Plaintiff amended its complaint. (See dkt. nos. 16, 18, 30.) In opposing dismissal of the FAC, Plaintiff submitted affidavits and other materials addressing the NDA, forum non conveniens, and personal jurisdiction. Even so, the claims remain fundamentally flawed, and Plaintiff has not identified any additional plausible allegations that would remedy these defects.

Because of the various failings discussed above, the Court finds that amendment would be futile. Accordingly, leave to amend is DENIED. See Hayden v. Cnty. of Nassau, 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## IV.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiff's request for leave to amend is DENIED.

In particular:

- Counts I-IV, against La Prairie SA and LPI, with respect to the La Prairie Disclosure, are DISMISSED on the grounds of <u>forum</u> <u>non</u> <u>conveniens</u> pursuant to the parties' agreed upon forum selection clause;

- Counts I-IV, against La Prairie SA and LPI, with respect to the Capsum Disclosure, are DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted;

- Count V, against La Prairie SA and LPI, is DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted; and

- Plaintiff's request for leave to amend is DENIED.

The Clerk of the Court shall: 1) enter judgment in this case; 2) close docket numbers 36 and 38; and 3) mark this action closed and all other pending motions denied as moot.

**SO ORDERED.**

Dated:    March 3, 2026
          New York, New York

_____

LORETTA A. PRESKA
Senior United States District Judge